**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

LOUIE WHITE,

        Defendant.

No. CR04-4113-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S § 2255 MOTION**

———————————————

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Charges And Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Sentencing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *C.  The § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.  Standards For Relief Pursuant To §2255* . . . . . . . . . . . . . . . . . . 6
    *B.  Preliminary Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *C.  Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . 9
        *1.  Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *2.  Ineffective Assistance With Regard To 21 U.S.C. § 860* . . . . 11
        *3.  Failure To Allow Access To Discovery File* . . . . . . . . . . . . 14
        *4.  Failure To Address Self-Incrimination* . . . . . . . . . . . . . . 15
        *5.  Failure To Address Violation Of The Marital Privilege* . . . . . 16
        *6.  Confidential Informant* . . . . . . . . . . . . . . . . . . . . . . . 17
        *7.  Failure To Spend Sufficient Time* . . . . . . . . . . . . . . . . . 18
        *8.  Other Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        *9.  Cumulative Effect* . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    *D.  Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 19

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I.  INTRODUCTION AND BACKGROUND

This matter comes before the court pursuant to defendant Louie White's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence (docket no. 71) ("Motion"), filed on December 2, 2005.  White alleges that his trial counsel provided him with ineffective assistance of counsel.  White claims that his counsel failed to spend sufficient time discussing the case with him; specifically that trial counsel failed to discuss the elements and consequences of a conviction pursuant to 21 U.S.C. § 860 (distribution of drugs in or near a school) with him, that trial counsel claimed that she could not let him see the prosecution's discovery file because she was not allowed to see it herself, and that counsel did not listen to or address his concerns about the reliability of the confidential informant.  In a letter, filed as a "supplemental brief" to his Motion, White argues that his counsel failed to address his Fifth Amendment right against self-incrimination and application of the marital privilege, with him. (Motion, Supp.Br. at 2).  The prosecution, in its Court Ordered Response To Defendant's Motion To Vacate, Set Aside Or Correct Sentence (docket no.76) argues that White's counsel did spend sufficient time discussing his case with him, and did offer to make arrangements for him to review the discovery file, that the evidence overwhelmingly supports conviction under 21 U.S.C. § 860 in his case, and that neither his Fifth Amendment rights nor the marital privilege were violated.  (Response at 7-12).

### A.  Charges And Plea

On December 9, 2004, White was charged in a three-count indictment (docket no. 1), with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine within 1,000 feet of a private school, in violation of Title 21 U.S.C.

§§841(a)(1) and 841(b)(1)(A) and 860(a), from about September 2002 through September 16, 2004. Count two of the indictment charged White with distribution of approximately 26.7 grams of a mixture or substance containing a detectable amount of methamphetamine which contained 1.3 grams of actual methamphetamine on or about June 17, 2004, in violation of Title 21, U.S.C. §§841(a)(1) and 841(b)(1)(C). Count three of the indictment charged White with distribution of approximately 46.4 grams of methamphetamine containing 6.5 grams of actual methamphetamine on or about July 15, 2004, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B).

On December 13, 2004, the Chief United States Magistrate Judge Paul A. Zoss set an arraignment and initial appearance for December 27, 2004. (docket no. 4). Judge Zoss subsequently reset the arraignment and initial appearance for December 29, 2004. (docket nos. 6, 7). White initially appeared, was arraigned and pleaded not guilty to all three counts of the indictment on December 29, 2004. (docket no. 8). White was released on his own personal recognizance. (docket no. 10). By Order, dated December 29, 2004, (docket no. 9), Judge Zoss scheduled a trial date of March 7, 2005. On February 4, 2005, Judge Zoss set the matter for plea hearing on March 1, 2005. (docket no.18). On February 7, 2005, the undersigned set this matter for sentencing on May 27, 2005. (docket no. 19). On February 28, 2005, through counsel, White moved for a continuance of the date set for plea hearing on the basis that the prosecution had not yet provided a copy of a written plea agreement to the defense. (docket no.20). On February 28, 2005, Judge Zoss granted White's Motion To Continue and continued the plea hearing to March 15, 2005. (docket no. 21). The undersigned then continued sentencing in this matter to June 24, 2005. (docket no. 26). By Order (docket no. 28) dated March 14, 2005, Judge Zoss continued the plea hearing in this matter to March 18, 2005. On March 18, 2005, White appeared and pleaded guilty to Counts one and three of the indictment and was allowed to remain on release on his own recognizance. (docket no.33). Judge Zoss filed his Report And Recommendation Concerning Plea Of Guilty on March 18, 2005. (docket no. 36). On April 6, 2005, the

undersigned accepted Judge Zoss's Report and Recommendation to Accept Guilty Plea and White's plea of guilty. (docket no. 44). By Order (docket no. 48) dated June 15, 2005, sentencing was continued by the undersigned, to June 30, 2005. On June 27, 2005, the prosecution filed an Unresisted Motion For Continuance of Sentencing Hearing based on a scheduling conflict. (docket no. 51). The undersigned granted the motion and continued the sentencing date in the above matter to August 4, 2005. (docket no. 52). The sentencing hearing was subsequently continued, by Order of June 28, 2005, (docket no. 53), to August 16, 2005.

## B. *Sentencing*

On August 16, 2005, White appeared before the undersigned and was sentenced to 120 months of incarceration on Count one of the indictment and to 120 months on Count 3 of the indictment, to run concurrently. (docket no. 60). All fines were waived and White received a special assessment of $200, with supervised release for a period of 10 years on Count one and 4 years on Count three, to run concurrently. The court found that White's adjusted offense level, pursuant to the United States Sentencing Guidelines, was 30 and that he fell into a criminal history category of I. The guidelines range for sentencing was between 97 and 120 months, however, Count one of the indictment carried a statutory mandatory minimum sentence of 120 months and Count three of the indictment carried a statutory mandatory minimum sentence of 60 months. White's concurrent 120 month sentence was therefore consistent with the mandatory minimum sentence required for Count one. Count two of the indictment was dismissed as to White. (docket no. 60).

## C. *The § 2255 Motion*

White did not appeal his conviction or sentence, instead, on December 2, 2005, he filed his *Pro Se* Motion (docket no. 71) now before the court. In support of his Motion, White asserts

that his counsel failed to adequately discuss various issues related to his charges with him. White specifically alleges that his counsel failed to discuss application of 21 U.S.C. § 860(a)(distribution in or near schools), with him, that counsel claimed that she did not have access to the prosecution's discovery file and could not provide access to the file, and that counsel did not listen to his concerns about the reliability of the confidential informant. In a letter, filed as an attachment to his Motion, White argues that his counsel failed to address with him his Fifth Amendment right against self-incrimination and application of the marital privilege. (Motion, Attachment 2).

The prosecution argues that, although White now claims that he did not engage in drug conspiracy activities within 1,000 feet of a school, he signed a plea agreement stipulating to engaging in the activities of the conspiracy within 1,000 feet of a high school. (Response at 8). Further, the prosecution relies on the affidavit of counsel (Response, Exhibit 1 p.1), to the effect that she did in fact discuss with White all issues of concern to him, including the location enhancement. With regard to White's allegation that his counsel told him that she was not allowed to view the discovery file, the prosecution points to counsel's statement, in her affidavit, that while she did tell White that she was not allowed to provide him with copies of the discovery file, she had reviewed it, summarized it for him and explained to him that if he wanted to view it personally, she would have to make special arrangements. (Response, Exhibit 1 p. 1-2). The Prosecution further points to White's initials on his plea agreement indicating that his attorney has represented him in a competent manner and that he has no complaints about her representation. (Response, Exhibit 2 at 13). In addressing the marital privilege, the prosecution argues that the Eighth Circuit Court of Appeals has adopted the "partners in crime exception" for communications between spouses involving the spouse joint criminal activity. (Response at 11). The prosecution argues that White's spouse, who was charged as a co-conspirator in this case,

was engaged in the joint criminal activity of the drug conspiracy and, therefore, the marital privilege would not have applied to any information obtained from her. (Response at 11).

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To §2255

Turning to the legal analysis of White's claims, in light of the evidence in the record, the court notes, first, that 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing

> of cause and prejudice, *United States v. Frady*, 456 U.S. 152,
> 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a
> showing that the alleged errors were fundamental defects resulting in
> a complete miscarriage of justice. *See United States v. Smith*, 843
> F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support

a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of White's claims for § 2255 relief.

## B. Preliminary Matters

"A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006)(quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted). In this case, the court concludes that no evidentiary hearing is required on any issue, because the record "conclusively show[s] that [White] is entitled to no relief" on his claim of ineffective assistance of counsel. 28 U.S.C. § 2255.

## C. Ineffective Assistance Of Counsel

### 1. Applicable Standards

White asserts that his counsel provided him with ineffective assistance of counsel by convincing him to plead guilty without thoroughly discussing the school enhancement, questions about his discovery file, concerns about the confidential informant, and concerns about possible violation of his Fifth Amendment right against self incrimination as well as violation of the marital privilege, with him. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not White is entitled to relief on his § 2255 motion turns on whether or not he can satisfy the standards applicable to his "ineffective assistance" claims.

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of counsel unless the petitioner can show not only that counsel's performance was deficient but

also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423

F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). To demonstrate "prejudice" in the context of a guilty plea, White must establish that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997).

## 2. *Ineffective Assistance With Regard To 21 U.S.C. § 860*

White claims that his counsel provided ineffective assistance of counsel by failing to spend sufficient time with him discussing the charges against him. Specifically, White now asserts that his counsel failed to explain the application of 21 U.S.C. § 860 (enhancement for engaging in drug activity in a protected location), to him. 21 U.S.C. § 860 provides in relevant part that:

> "Any person who violates Section 841(a)(1) of this title by distributing, possessing with intent to distribute,…a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school. . . ., is subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense. . . . .Except to the extent a greater minimum sentence is otherwise provided by section 841(b) of this title, a person

shall be sentenced under this subsection to a term of imprisonment of not less than one year."

Counsel indicates the following in her affidavit: "I listened to Mr. White's concerns, reviewed the evidence in the case, discussed it with him and I believe I provided the best advice I could give him based on the facts and circumstances of the case." (Response, Exhibit 1 p.2). Counsel's affidavit thus indicates that if White raised a concern about application of § 860, she discussed it with him and reviewed the facts and circumstances of his case in light of this concern.

The court, having reviewed the transcript from the plea hearing, is satisfied that White himself indicated, during his plea colloquy, under oath, that he had been given sufficient time to discuss the case with his counsel and had no complaints regarding her representation. A defendant's representations during plea taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings. *See United States v. Ledezma-Rodriquez,* 423 F.3d 830, 836 (8th Cir. 2005)(citing *Voytik v. United States,* 778 F.2d 1306, 1308 (8th Cir. 1985), in turn quoting *Blackledge v. Allison,* 431 U.S. 63, 73 (1977)). White clearly indicated during his plea hearing both that he understood the application of 21 U.S.C. § 860 and that his counsel had adequately represented him. And again, White in writing, as part of his plea agreement, stated that he had been given an opportunity to discuss his case with counsel and had no complaints about her representation. (Response, Exhibit 2 at Paragraph 36). Based on the record, this court cannot find that counsel's representation with regard to the school location enhancement of 18 U.S.C. § 860 "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688)

Even if White's counsel had failed to adequately explain 21 U.S.C. § 860 to him, White cannot demonstrate that he would have been prejudiced by such failure. To satisfy the "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for

12

counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). There is sufficient evidence in the record to indicate that in all likelihood, the prosecution would have been able to obtain a conviction pursuant to 21 U.S.C. § 860. There was sufficient evidence in the record for a reasonable jury to find that White took several actions to further the crime of distributing or possessing methamphetamine with the intent to distribute, within 1,000 feet of a school. The Presentence Investigation Report (docket no. 65) states that between September 2002 and September 2004, White sold methamphetamine out of his home to a confidential informant on multiple occasions. There is no dispute that White's home at the time of the conspiracy was within 1,000 feet of a private school, Bishop Heelan High School. White did not object to these factual findings in the Pre-Sentence Investigative Report. Further, White initialed, and therefore agreed to, provisions of his plea agreement stipulating that he was part of a conspiracy to distribute methamphetamine within 1,000 feet of a school. Additionally, White's *Pro Se* Brief In Support Of His Motion (docket no. 74.) indicates that he would make phone calls from his home in order to make arrangements for the purchase of drugs. (Brief at 2). These facts would be sufficient for a reasonable jury to find that White was part of a drug conspiracy to distribute or possess with intent to distribute methamphetamine within 1,000 feet of a private school. *See United States v. Euans,* 285 F.3d 656, 662 (8th Cir. 2001) (engaging in actions, including taking phone calls and messages, and providing transportation, to further the crime of distributing methamphetamine within 1,000 feet of a protected location sufficient evidence). Given the facts and circumstances of the case, it was not unreasonable for White's counsel to advise him to plead guilty to the

charge. *See Witherspoon v. Purkett,* 210 F.3d 901, 903 (8th Cir. 2000)(no prejudice where defendant cannot show that counsel would have changed a previous recommendation to plead guilty). White cannot establish either that he received ineffective assistance of counsel or that he suffered any prejudice.

### 3. Failure To Allow Access To Discovery File

White alleges that his counsel told him that he could not see the prosecution's discovery file in his case because the marshals would not even let her see it. (Motion at 5). This is directly refuted by the affidavit submitted by counsel in response to White's Motion. The affidavit of counsel states, "At no time did I tell Mr. White that I could not review the discovery file, I did inform him that I could not provide copies of the discovery file to him. I did summarize the contents of the discovery file and told him he could see it but we had to make special arrangements to do that." (Response, Exhibit 1 at 1).

White's Motion itself confirms that he did have knowledge of the information in the discovery file because the grounds raised in his Motion require such knowledge. In his § 2255 Motion, White complains about the reliability of the confidential informant and about the use of his wife's testimony. White's own legal filings indicate that he had a familiarity with the information and testimony that the prosecution intended to use against him, thus verifying counsel's statement that she summarized the discovery file for him.

A defendant's assertion in a § 2255 motion is not by itself sufficient to support a grant of relief under § 2255 if evidence that the fact finder finds to be more credible indicates the contrary position. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). This court finds there is no merit to White's assertion that his counsel informed him that he could not have access to the discovery file in this case and finds more credible his counsel's statement that she both told him that he could have access to the file, if arrangements were made, and that she summarized the file to him.

### 4. *Failure To Address Self-Incrimination*

White asserts that his Fifth Amendment rights were violated when the prosecution used his grand jury testimony against him and that although he discussed this with his counsel, she failed to act upon his concerns. (Motion, Supplemental Brief at 1 ).

The Supreme Court has established that the Fifth Amendment's proscription that "no person shall be compelled in any criminal case to be a witness against himself" applies to one who appears as a grand jury witness and is there asked incriminating questions. *United States v. Plesons,* 560 F.2d 890, 892 (8th Cir. 1977) (citing *Counselman v. Hitchcock,* 142 U.S. 547, 562 (1892),*overruled in part, Kastigar v. U.S.,* 406 U.S. 441, 449-454 (1972)). However, it is also axiomatic that the Amendment does not automatically preclude self-incrimination, whether spontaneous or in response to questions put by government officials: "It does not preclude a witness from testifying voluntarily in matters which may incriminate him." *United States v. Monia,* 317 U.S. 424, 427 (1943). In addition to guaranteeing the right to remain silent unless immunity is granted, the Fifth Amendment proscribes only self-incrimination obtained by a "genuine compulsion of testimony." *United States v. Washington,* 431 U.S. 181, 187 (1977). In the absence of any actual or inherent coercion or compulsion of the defendant, neither the failure to warn the defendant that he was a potential defendant or to advise him of his Fifth and Sixth Amendment rights, nor the failure to secure an effective waiver of those rights, would be grounds for suppressing evidence. *United States v. Hutchings*, 751 F.2d 230, 235 (8th Cir. 1984) *rhg. denied; rhg. en banc denied.* Counsel states in her affidavit that "we discussed his options at length on more than one occasion, including what it would mean to testify before the grand jury." (Response, Exhibit at 1). It would not have been unreasonable for counsel to determine that even if White were to proceed to trial and counsel were to object to the use of his grand jury statements against him, such statements would have been admitted. White was represented by counsel at the time of his grand jury testimony and the record demonstrates that counsel discussed his grand jury

testimony with him.  Therefore, White has not demonstrated that his testimony in front of the grand jury was anything other than voluntary.  Consequently, White cannot establish either that his counsel's failure to take any action with regard to his concern about his Fifth Amendment rights "'fell below an objective standard of reasonableness'".  *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688), or that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty but would have proceeded to trial.  *Hill v. Lockhart*, 474 U.S. 52, 57-59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

### 5.    *Failure To Address Violation Of The Marital Privilege*

White asserts that the prosecution used evidence against him that was obtained  in violation of the marital privilege.  White alleges that his wife's grand jury testimony was used against him and that he raised this concern with his attorney.  (Motion, Supplemental Brief at 1).  The prosecution argues that the marital privilege does not apply in cases involving joint criminal activity such as that involved in this case.  (Response at 11-12).

The marital confidential communications privilege prohibits testimony regarding private intra-spousal communications.  *United States v. Evans,* 966 F.2d 398, 401 (8th Cir. 1992) (citing *United States v. Lilley,* 581 F.2d 182, 189 (8th Cir. 1978)).  The privilege extends only to words or acts that are intended as a communication to the other spouse.  *See Pereira v. United States,* 347 U.S. 1, 6-7 (1954); *United States v. Smith,* 533 F.2d 1077 (8th Cir. 1976).  The communication must also occur during a time when the marriage is valid under state law and the couple is not permanently separated.  *United States v. Jackson,* 939 F.2d 625, 627 (8th Cir. 1991).  Finally, the communication must be made in confidence, in other words, it cannot be made in the presence of a third party, and the communicating spouse cannot intend for it to be passed on to others. *United States v. McConnell,* 903 F.2d 566, 572 (8th Cir. 1990), *cert denied,* 498 U.S. 1106 (1991).  Once these prerequisites are met, a defendant may invoke the privilege

to prevent his spouse from testifying as to the content of the protected communication. *United States v. Evans,* 966 F.2d 398, 401 (8th Cir. 1992).

However, the Eighth Circuit Court of Appeals has approved the "joint criminal activity" exception to the privilege. *See id.*(holding that statements by a defendant to his wife about ongoing marijuana growing operation were not protected by the marital confidential communications privilege). In this case, White's spouse was indicted as a co-conspirator in the drug conspiracy, and White stipulated that he and his wife transferred methamphetamine to a confidential informant on or about July 15, 2004. (Response, Exhibit 2 at 12). Because White was engaged in "joint criminal activity" with his wife, the privilege does not extend to statements made by his spouse regarding the drug conspiracy. Because the "joint criminal activity" exception to the privilege would have applied in this case, his counsel was not objectively unreasonable for not taking any action with regard to it, and her opinion will not be second guessed by the court. *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 (strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.) Because White cannot establish deficient performance by counsel, the court will not proceed further to analyze this aspect of White's "ineffective assistance" claim. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).

### 6.    *Confidential Informant*

White alleges that his counsel refused to "listen to me about them using a dirty C.I." (Motion at 5). White alleges that the confidential informant used by the government was "dirty" because "(a) he always left his money about two to three hours before or maybe even overnight; (b) he always broke a big piece and put it in his pocket and always did a couple of lines before

leaving; and (c) he always took some money out and put it in his pockets". (Supplemental Brief at 2).

Presumably White is alleging that these were all reasons for challenging the credibility of the confidential informant. Again, counsel's affidavit contemplates that she considered all of the facts and circumstances related to the confidential informant and determined that the question of credibility of the confidential informant would not have provided sufficient reason to reject a plea agreement. In addition, the confidential informant in this case made a controlled buy, and the Eighth Circuit Court of Appeals has recognized that there is an inherent indicia of reliability in the richness and detail of a first hand observation of a confidential informant. *United States v. Warford,* 439 F.3d 836, 842 (8th Cir. 2006). The decision that the confidential informant's information was not so unreliable that it would convince counsel to advise her client not to accept a plea agreement was a strategic choice made by counsel after thorough investigation of law and facts relevant to plausible options and is virtually unchallengeable. *See, Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690).

### 7.    *Failure To Spend Sufficient Time*

White asserts that his counsel only discussed his case with him one time before court. (Motion at 4). It is well established that the adequacy of counsel cannot be determined solely on the basis of the amount of time counsel spent interviewing their client. *See Lupo v. United States,* 435 F.2d 519, 523 (8th Cir. 1970) (citing *Kress v. United States,* 411 F.2d 16, 22 (8th Cir. 1969)). Further, the affidavit submitted by counsel in this matter refutes this assertion. Counsel states, "We met in the conference room of the Federal Defender's Office where we discussed his options at length on more than one occasion...." (Response, Exhibit 1 at 1). First, the court does not find White's assertions regarding the time his counsel spent with him believable and, second, because the court does not find that counsel otherwise provided ineffective assistance of counsel to Mr. White, the court does not find that an allegation that counsel spent insufficient time with

White, without more, is sufficient to establish an ineffective assistance of counsel claim pursuant to § 2255.

### 8. *Other Claims*

White raises additional claims relating to the alleged deficiency of counsel without providing an explanation of how specifically the alleged deficiencies prejudiced him. White claims that his counsel refused to listen to anything he had to say; that she told him to sign papers and she would take care of the rest; and she told him that "they have you". (Motion at 5). The court, without addressing each in detail, cannot find that any of these claims is sufficient to establish that he received ineffective assistance of counsel.

### 9. *Cumulative Effect*

Although White's Motion never specifically uses the term "cumulative effect", he does at times indicate that all of the above deficiencies, taken together, deprived him of the right of effective counsel. The court rejects any such argument, based on the above Eighth Circuit Court of Appeal's precedent. The Eighth Circuit Court of Appeals has repeatedly recognized that "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Middleton v. Roper,* 455 F.3d 838, 851 (citing *Hall v. Luebbers,* 296 F.3d 685, 692 (8th Cir. 2002)). Cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own. *Scott v. Jones,* 915 F.2d 1188, 1191 (8th Cir. 1990).

### D. *Certificate Of Appealability*

Denial of White's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claim therein. Whether or not a certificate of appealability should issue is controlled by 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

>**(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>* * *
>
>**(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b). To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court finds that White has not made a substantial showing of the denial of a constitutional right on his § 2255 claim. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find this court's assessment of White's claim debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, White does not make the requisite showing to satisfy § 2253(c) on his claim for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).

### III. CONCLUSION

Upon the foregoing, defendant White's *Pro Se* Motion Under 28 U.S.C. § 2255 (docket no.71) is **denied in its entirety**. This matter is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 26th day of February, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA